IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Docket No. 3:21-CR-314TJM |
| WILLIAM L. MARSHALL, | |
| Defendant. | |

## DEFENDANT WILLIAM L. MARSHALL'S SENTENCING MEMORANDUM

The Defendant, William L. Marshall, by and through his attorney, Raymond M. Schlather, respectfully submits this Sentencing Memorandum in connection with his sentencing currently scheduled for June 8, 2022.

### SUMMARY

As this Court is well aware, since *United States v. Booker*, 543 U.S. 220 (2005), the Federal Sentencing Guidelines ("Guidelines") are advisory only, and must be used only as a starting point in crafting an individualized sentence based upon certain available departures and consideration of the factors set forth in Section 3553(a).

As outlined below, there are good reasons to support a sentence below the Guideline range. Nevertheless, Mr. Marshall is prepared to accept a sentence of 27 months imprisonment, a 2-year term of supervised release, forfeiture of items as set forth in the Information as stipulated, and a $200.00 assessment.

Except as clarified herein, the defendant accepts the findings, calculations and recommendation of the United States Probation Office as set forth in its Presentence Investigation Report with revised date of May 23, 2022.

## SENTENCING CALCULATIONS AND ISSUES

### A. ADVISORY SENTENCING GUIDELINE CALCULATION

According to the PSR, the advisory guidelines calculation, with all anticipated adjustments, results in a total offense level of 17 (PSR, paragraphs 17-27). With Mr. Marshall's criminal history Category II, the guideline range is 27 to 33 months imprisonment.

### B. MITIGATING ISSUES

Notably, this result is based on a four-level upward adjustment – to which Mr. Marshall stipulated as part of the Plea Agreement – because the firearm and ammunition were possessed in connection with another felony offense (PSR, paragraph 19). However, there are three mitigating factors in connection with this adjustment. First, as the PSR notes, the gun and ammunition were possessed by Mr. Marshall because of physical threats made against his handicapped brother (PSR, paragraph 14). Second, the felony offense was marijuana based; Mr. Marshall was engaged in marijuana sales as part of the general cultural shift in New York State, including its more recent legalization of marijuana (PSR, paragraph 14). Third, the gun was not loaded; nor was there any evidence of discharge (PSR, paragraph 9).

Furthermore, although the instant offenses were discovered by the Ithaca Police Department during a search of Mr. Marshall's home in connection with an investigation of an unrelated murder, law enforcement readily acknowledges that the firearm and ammunition do not match the .45 caliber weapon and ammunition that allegedly were used in the murder (PSR, paragraph 9, footnote 2). Mr. Marshall has emphatically denied any involvement in the murder, and that issue is more properly addressed in New York State Court.

Finally, the Court has been provided with 21 letters from members of the community who recognize the good work that Mr. Marshall has engaged since his release from prison more than 10 years ago. These letters variously describe Mr. Marshall: as "deeply enmeshed" in the community with the "defining drive of his adult life has been to support those most in need and to help others find their own success"; and, "always focused on helping others"; and, "always looks out for those in the most need"; and, "cares deeply" and is "thoughtful and caring" with "strong convictions and has enriched our community by his ongoing work with both students and prisoners"; and, generously sharing the "hard lessons of his own imperfect journey". Some of Mr. Marshall's social contributions include: raising money and partnering with a local chef to feed the homeless in Ithaca's "Jungle" homeless encampment at the height of the COVID pandemic, thereby providing both income to the restaurant and food to the hungry; inspiring former inmates to return to school, including one who is now in the Yale Law School; developing a program for the support of children of incarcerated individuals; developing a loan fund for formerly incarcerated, now students; implementing a project to help families overcome "the transportation hurdle" in order to visit with their incarcerated loved ones; and regularly meeting with high school and college students in a variety of program settings to talk about incarceration and reentry issues.

Mr. Marshall matriculated at and secured his bachelor's degree from Cornell University upon his release from prison. He is an intelligent, thoughtful person whose life mission is to help especially vulnerable individuals who seemingly have no other recourse. He is a social activist in the best sense of the term, walking the talk at so many levels of constructive community involvement.

## C. <u>SECTION 3553 (A)(2) FACTORS AND RELATED LAW</u>

Section 3553(a)(2) mandates that sentencing courts consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. §3553(a)(2). In sum, these factors are concerned with specific deterrence, general deterrence, and the likelihood of recidivism.

The ***advisory*** sentencing guideline is ***but one of several factors*** set forth in Section 3553(a) and is not by itself an indication of a *reasonable* or *just* sentence for Mr. Marshall.

Although the Court is required to consider the ***advisory*** sentencing guideline and it is expected that the Government will, as it always does, recommend that Mr. Marshall be sentenced to the high end of the ***advisory*** guideline sentence, for many reasons, the ***advisory*** sentencing guideline is not an indication of a *reasonable* or *just* sentence for Mr. Marshall.

In a series of cases involving the child pornography guidelines, the Second Circuit has cautioned District Courts not to "presume that a Guidelines sentence is reasonable for any particular defendant." *United States v. Dorvee*, 616 F. 3d. 174, 182 (2d Cir. 2010); *see also United States v. Chow*, 441 Fed.Appx. 44, 2011 WL 5829616 (2d Cir. 2011); *United States v. Jenkins*, 854 F. 3d 181, 188-190 (2d Cir. 2017). In this line of cases, the Second Circuit has supported the discretion of District Courts to vary from the Sentencing Guidelines based upon policy disagreements and has emphasized the District Court's obligations under the parsimony clause to conduct an independent, thorough, and individualized analysis of the §3553(a) sentencing factors and that such analysis should not be undermined or countermanded by

4

consideration of the Sentencing Guidelines. *Jenkins*, 854 F. 3d at 188-190.

While *Dorvee* and its progeny specifically discuss the "irrationality in §2G2.2," which is not the Sentencing Guideline section at issue here, the reasoning in *Dorvee* does apply here. That is because many of the guideline enhancements in U.S.S.G. §2K2.1, like those in U.S.S.G. §2G2.2, are "all-but-inherent" in the offense conduct. *See United States v. Jenkins*, 854 F. 3d 181, 188-190 (2d Cir. 2017). Like the child pornography guidelines in 2G2.2, the U.S.S.G. §2K2.1 enhancements inflate the advisory sentencing guideline range at every turn and often unfairly so.

Here, the very same firearm that is included in the base offense level, also is a stolen firearm, resulting in a 2-level enhancement; and, that that same firearm was possessed in connection with the marijuana offense enhances by an additional 4 levels (PSR, paragraphs 17-19). In other words, these enhancements, again applying to the same firearm, result in an additional six-level increase in Mr. Marshall's adjusted offense level (PSR, paragraphs 17-19). These enhancements, which are duplicative, collectively increase the recommended period of incarceration from 10 to 16 months (Total Offense Level 11, Criminal History Category II) to 27 to 33 months (Total Offense Level 17, Criminal History Category II). So, while the defendant has stipulated to the application of these enhancements under the advisory sentencing guidelines because they technically apply, it becomes clear that raising the adjusted offense level by six levels is simply not supportable under the facts and circumstances here.

Additionally, it is not clear what, if any, empirical evidence supports either the base offense level of this guideline or the enhancements here, especially as they apply to Mr. Marshall. As with many sentencing guidelines, the base offense level appears to be, at best,

based upon some rough estimation and subjective judgment about the relative potency or danger of the conduct at issue.

What is clear from the legislative history, however, is that the amendments to this guideline section, through the years, have conflated the difference between possessory firearm offenses and trafficking in firearms. See Amendment 374 to U.S.S.G. (effective November 1, 1991). Prior to this Amendment, the sentencing guidelines appeared to treat trafficking in firearms more seriously than possession, and rightfully so.

The Court, therefore, can take all of this into consideration, along with other 18 U.S.C. §3553 factors, in determining a fair and just sentence for Mr. Marshall and one that is not greater than necessary to comply with the specific purposes set forth in 18 U.S.C. §3553(a)(2).

## NO FINE

Mr. Marshall does not have the ability to pay a fine (PSR, paragraph 60). The sale of his residence in August 2021 for $250,000.00 (see PSR, paragraph 58) did not result in any proceeds actually being paid to Mr. Marshall. The residence was transferred to an LLC owned by Mr. Marshall's uncle, James Marshall. The "proceeds" of this sale have been dedicated to payment of Mr. Marshall's legal fees by James Marshall in both this case and in New York State Court. This has been confirmed by the uncle's personal attorney who handled the transaction.

## **CONCLUSION**

For the reasons set forth above, it is respectfully requested that the Court sentence William Marshall to 27 months imprisonment, a 2-year term of supervised release, forfeiture of items as set forth in the Information as stipulated, and a $200.00 assessment.

Dated: May 27, 2022

Respectfully submitted,

_____
**RAYMOND M. SCHLATHER**
Schlather, Stumbar, Parks & Salk, LLP
200 East Buffalo Street, PO Box 353
Ithaca, New York 14851
Bar Roll No. 501364
(607) 273-2202
ray@ithacalaw.com

7